UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| HAROLD VONDERHAAR, *et al*. | : | Case No. 1:17cv480 |
| Plaintiffs, | : | Judge Michael R. Barrett |
| v. | : | |
| VILLAGE OF EVENDALE, OHIO, *et al*. | : | |
| Defendants. | : | |
| | : | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Temporary Restraining Order and Preliminary and Permanent Injunction and the responsive memoranda thereto. (Docs. 2, 15, and 17). The Court held a hearing on September 27, 2017. Following the hearing, the parties submitted post hearing briefs. (Docs. 29, 30). This matter is now ripe for review.

**I.   FACTS**

The crux of the issue herein relates to the constitutionality of one particular Chapter – Chapter 1468 – of the Village of Evendale Property Maintenance Code ("Code") enacted on February 14, 2017. The purpose of the Chapter is to "insure the public health, safety and welfare by establishing minimum standards governing the maintenance, appearance, and conditions of all residential and nonresidential premises." (Doc. 1-3, PageID 30). As it relates to this case, the Code governs the required procedures for obtaining rental permits in the Village. (*See generally* id.). Section 1468.06 of the Code provides as follows:

> Prior to the issuance of a permit, property owners seeking a rental registration permit shall do either of the following:

1

1. Permit the rental property for which the permit is being sought to be inspected by the Building Commissioner and/or their designee(s) to determine compliance with this Code; or

2. Sign a sworn affirmation indicating that the property in question is in compliance with this Code.

(Id. at PageID 44). The Code also outlines the authority of the Building Commissioner—a position currently held by Defendant Donald Mercer. (Section 1468.13; (Doc 1, PageID 5 at ¶ 13). Regarding Right of Entry, the Code states:

> Where it is necessary to make an inspection to enforce the provisions of this code, or whenever the Building Commissioner has reasonable cause to believe that there exists in a structure or upon a premises a condition in violation of this code, the Building Commissioner is authorized to enter the structure or premises at reasonable times to inspect or perform the duties imposed by this code, provided that if such structure or premises is occupied the Building Commissioner shall present credentials to the occupant and request entry. If such structure or premises is unoccupied, the Building Commissioner shall first make a reasonable effort to locate the owner or other person having charge or control of the structure or premises and request entry. If entry is refused, the Building Commissioner shall have recourse to the remedies provided by law to secure entry.

(Id. at PageID 51, Section 1468.13(C)). Finally, relevant to this lawsuit, the Code outlines the penalties for violations as follows:

A. Whoever knowingly makes false statements in a sworn affidavit submitted pursuant to Section 1468.06(B) shall be guilty of a misdemeanor of the first degree, and subject to penalties as specified in Evendale Code of Ordinances § 698.02.

B. Whoever violates or fails to comply with any other provision of this chapter is guilty of a minor misdemeanor for a first offense. Whoever violates or fails to comply with any other provision of this chapter on two or more occasions is guilty of a misdemeanor of the third degree for each offense after the first.

C. A separate offense shall be deemed committed each day during or on which a violation or noncompliance occurs or continues.

(Id. at PageID 55, Section 1468.99).

Plaintiffs separately own and manage rental properties in the Village. (Doc. 1, PageID 3 at ¶ 1). Plaintiff Lemen chose to execute an affidavit indicating he believed his sole rental property was in compliance with the Code. (Doc. 1, PageID 9 at ¶ 43). He paid the required $100 fee for his rental property, and has had no further contact with the Village as it relates to the Code. His rental property had not been subject to an inspection.

Plaintiff Vonderhaar owns or manages 13 different single-family rental properties in the Village. On June 26, 2017, he received letters from the Village threatening legal action if rental registration permits were not obtained. (Doc. 1-3, PageID 76-87). On July 20, 2017, after this lawsuit was filed, the Village cited Plaintiff Vonderhaar for failing to obtain a rental registration permit. (Ex. 2; Ex. 3). The citations are minor misdemeanors in which he is subject to a fine in an amount up to $150 per day for each property. (Ex. 1). No other enforcement actions have been initiated against rental property owners. (Doc. 28, PageID 878).

Plaintiffs move for injunctive relief, mounting both a facial attack on the Code and an as-applied attack. They ask the Court to strike portions of the Code they deem unconstitutional and to suspend enforcement of the Code.

## II. STANDARD FOR INJUNCTIVE RELIEF

The threshold issues before the Court are whether the search provision and waiver provision violate the Fourth and Fifth Amendments to the United States Constitution, respectively.

Under Federal Rule of Civil Procedure 65, injunctive relief is an extraordinary remedy, the purpose of which is to preserve the status quo. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). In determining whether to grant or deny a preliminary injunction, the Court must consider four factors: (1) whether the movant has

3

a likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (citing *Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012)). The foregoing factors are not prerequisites, but are factors that the Court should balance. *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

On a preliminary injunction, "a plaintiff must show more than a mere possibility of success," but need not "prove his case in full." *Certified Restoration Dry Cleaning Network*, 511 F.3d at 543. "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Northeast Ohio Coalition v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)).

### III. <u>ANALYSIS</u>

The resolution of a facial challenge has a different practical effect than the resolution of an as-applied challenge. As the Sixth Circuit has explained:

> A court may hold a statute unconstitutional either because it is invalid 'on its face' or because it is unconstitutional 'as applied' to a particular set of circumstances. Each holding carries an important difference in terms of outcome: If a statute is unconstitutional as applied, the State may continue to enforce the statute in different circumstances where it is not unconstitutional, but if a statute is unconstitutional on its face, the State may not enforce the statute under any circumstances.

*Women's Med. Prof'l Corp. v. Voinovich,* 130 F.3d 187, 193 (6th Cir.1997). Each will be addressed in turn.

A. **Facial Challenge**

1. **Likelihood of Success on the Merits**

To show a likelihood of success, a plaintiff must demonstrate more than a mere possibility of success, but it need not "prove [its] case in full." *Northeast Ohio Coalition v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (quoting *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007)). However, "a finding that there is simply no likelihood of success on the merits is usual fatal" to a request for injunctive relief. *Gonzales v. Nat'l Bd. Of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

a. Fourth Amendment

"A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles Calif. v. Patel*, 135 S.Ct. 2443, 2449 (2015). While generally, facial challenges are "the most difficult…to mount successfully[,]" "facial challenges under the Fourth Amendment are not categorically barred or especially disfavored." *Id.* To succeed in a facial challenge, a plaintiff must establish a "law is unconstitutional in all of its applications." *Id.* at 2451 (quoting *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)).

Plaintiffs move for injunctive relief, arguing the Code is unconstitutional on its face because it includes a warrantless search provision in violation of the Fourth Amendment. The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Whether probable cause exists to obtain an administrative search warrant hinges on whether

a particular inspection is reasonable; specifically, the need for the inspection must be weighed in terms of [the Code's] reasonable goals of code enforcement. *Camara v. Mun. Court*, 387 U.S. 523, 532 (1967).

As the Court explained in *Camara*, "administrative searches…are significant intrusions upon the interest protected by the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual[.]" *Id.* at 534. In other words, administrative searches conducted without a warrant procedure violate the Fourth Amendment. *Id.*

In *Baker v. City of Portsmouth*, No. 1:14cv512, 2015 WL 5822659 (S.D. Ohio 2015), another Judge in this district found that a similar ordinance violated the Fourth Amendment because it authorized warrantless administrative inspections. The court explained that under the ordinance "the owners and/or tenants of rental properties in Portsmouth are thus faced with the choice of consenting to the warrantless inspection or facing criminal charges, a result the Supreme Court has expressly disavowed under the Fourth Amendment." *Id.* at *5 (citing *Camara*, 387 U.S at 532).

Defendants argue the ordinance in *Baker* is distinguishable. While in *Baker* it was undisputed the ordinance afforded no warrant procedure, Defendants argue the Code's language "[i]f entry is refused, the Building Commissioner shall have recourse to the remedies provided by law to secure entry" serves as a warrant provision. They reason that because warrantless searches are illegal absent exigent circumstances, the Code does not authorize warrantless administrative searches. In support of their argument, Defendants cite to various cases in which they assert other courts have held similarly.

They first cite *Mamakos v. Town of Huntington*, No. 16-CV-5775, 2017 WL 2861719 (E.D.N.Y. July 5, 2017). Related to entry, the ordinance at issue provided as follows:

(A) Application for a search warrant...The Town ordinance/code enforcement officer is authorized to make application to any court of competent jurisdiction for the issuance of a search warrant in order to conduct an inspection of any premises covered by this chapter where the owner or managing agent or occupant fails or refuses to allow an inspection of the rental property, and where there is reasonable cause to believe that a violation of this chapter has occurred. The application for a search warrant shall in all respects comply with the applicable laws of the State of New York.

(B) Search without warrant restricted. Nothing in this chapter, except for the provisions concerning emergency inspections, shall be deemed to authorize the Town ordinance/code enforcement officer to conduct an inspection of any premises subject to this chapter without the consent of the owner, managing agent, or occupant of the premises, or without a warrant duly issued by a court of competent jurisdiction.

*Id.* at *5. The court held that the ordinance was not unconstitutional on its face because it required either consent or a warrant for an administrative search except in emergency situations. *Id.* at *10. The court explained that unlike in *Baker*, the ordinance in *Mamakos* included a warrant provision.

Defendants next cite *Marcavage v. Borough of Landsowne, Pa.*, 493 Fed. Appx. 301 (3rd Cir. 2012) wherein the court rejected a facial attack on a similar ordinance under the Fourth Amendment. With respect to entry, the ordinance provided:

The owner, occupant, tenant or person in charge of any property or rental unit possesses the right to deny entry to any unit or property by a Code Enforcement Officer for purposes of compliance with this chapter. However, nothing in this chapter shall prohibit a Code Enforcement Officer from asking permission from a owner, occupant, tenant or person in charge of property for permission to inspect such property or rental unit for compliance with this chapter and all other applicable laws, regulations and codes, to seek a search warrant based on probable cause or to enter such property or rental unit in the case of emergency circumstances requiring expeditious action.

7

*Id.* at 304. In finding the ordinance constitutional, the court distinguished the ordinance at issue from that in *Camara*, which was deemed unconstitutional because it established criminal penalties for owners who refused to allow a city inspector to enter her or his property. *Id.* (citing *Camara*, 387 U.S. at 532-33). The Third Circuit explained "the Ordinance carries no criminal penalties based upon an owner's refusal to allow an inspection. It also does not provide the city employee with unfettered discretion in deciding if and when to conduct an inspection." *Id.* at 306.

Finally, Defendants rely on an Ohio case in which the Eleventh District denied a request for injunctive relief based upon a facial challenge under the Fourth Amendment. *Kaim Properties, L.L.C. v. Mentor*, Lake No. 2012-L-055, 2013 WL 5450431 (Ohio App. 11th Dist. Sept. 30, 2013). As it related to entry, the ordinance stated:

> If any owner, occupant, or other person in charge of a structure subject to the provisions of this code refuses, impedes, inhibits, interferes with, restricts, or obstructs entry and free access to any part of the structure or premises where inspection authorized by this code is sought, the code official shall be permitted to seek, in a court of competent jurisdiction, a warrant for administrative inspection. Any warrant for administrative inspection shall allow for the inspection of the subject structure and premises, and any parts thereof, pursuant to the provisions of this code and shall be so limited in scope. Mentor Codified Ordinances 1391.06.

*Id.* at *6.

All of the cases cited by Defendants have one important thing in common—the ordinances at issue included an express warrant provision. As noted above, Defendants argue the Code likewise includes a warrant provision. In other words, Defendants essentially ask the Court to rule as a matter of law, that including language such as "the remedies provided by law" is sufficient to overcome a constitutional challenge. The Court declines to do so.

It is axiomatic that the Building Commissioner would have remedies provided by law to secure entry. However, ruling as a matter of black letter law that such a generic, catch-all

8

provision is a sufficient warrant provision would effectively defeat any facial challenge ever raised in this context. Indeed, at least at this stage, the Court finds such general language, without more, cannot cure a constitutional deficiency.

Defendants rely on Mr. Mercer's interpretation of the Code to argue that Plaintiffs' properties will not be subject to warrantless searches. (Doc. 29, PageID 898) ("Mercer testified he would only seek an administrative warrant from the solicitor if he had significant evidence indicating a serious safety hazard associated with the property."). Mr. Mercer also testified that his understanding of the Code is that if he is refused entry, he is authorized to go to a court of common pleas, file an affidavit and request an administrative warrant. (Doc. 16-1, PageID 216). However, it is of little relevance how Mr. Mercer interprets the Code. While it is comforting to know Mr. Mercer does not intend to perform illegal administrative searches, the simple fact remains – the Code does not include a warrant provision. Without such a provision, there is no clear procedure for the Building Commissioner – a position which could be occupied by someone other than Mr. Mercer one day – to follow. As the Court explained in *Camara*, "when the inspector demands entry, the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization." *Camara*, 387 U.S. at 532. While factual distinctions exist between *Camara* and the case at bar, the Court has serious concerns that extending such power to one individual, in this case the Building Commissioner, without a warrant procedure (based upon the requisite probable cause standard) is constitutional on its face.

The Court recognizes that the question is not whether the Code *may* be unconstitutionally applied, but whether there exists "no" or at least few "circumstances" under which the Code

would be valid. *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc) (citing *U.S. v. Salerno*, 481 U.S. 739, 745 (1987)). The Court is unable to definitively answer that question at this juncture. However, the Court finds, at this early stage, the lack of an express warrant provision raises questions that are sufficiently serious, substantial, and difficult so as to satisfy Plaintiffs' preliminary burden.[1]

i. Closely Related Business Exception

In the alternative, Defendants argue renting residential properties is a closely regulated business and thus, warrantless inspections are permissible under the Fourth Amendment. This exception, recognizes that "[c]ertain industries have such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978) (internal citations omitted). The Supreme Court has only recognized four industries as being closely regulated: liquor sales, firearms dealing, mining, and running an automobile junkyard. *Patel*, 135 S.Ct. at 2454.

The court in *Baker* addressed and rejected the same argument raised by Defendants herein. This Court likewise rejects Defendants' argument. As the court explained, "[a]s the Supreme Court has warned, to classify the rental business as closely regulated 'would permit what has always been a narrow exception to swallow the rule.' Accordingly, the exception does not render the warrantless inspections authorized by the Code reasonable under the Fourth Amendment." *Baker*, 2015 WL 5822659 at *5 (internal citations omitted).

---

[1] The Code contains a severability clause, which provides: "Each portion of this chapter stands on its own. If any section, subsection, or portion thereof is found by the courts to be invalid or unconstitutional, only that portion shall be affected by that decision. The remainder of this chapter shall remain intact and in force." (Section 1468.04.) Therefore, the Court notes that if Section 1468.13(C) is ultimately found to be unconstitutional, the remainder of the Code could still be valid and enforceable. *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc).

b. Fifth Amendment

Plaintiffs also argue portions of the Code violate the Fifth Amendment, though their arguments on this point are entangled with their Fourth Amendment arguments addressed above. As best the Court can tell, they argue as follows: Plaintiffs have two choices—both of which are unconstitutional. They can either consent to a warrantless search of the rental property in violation of their Fourth Amendment rights or they can affirm their properties are in compliance with the code. If they choose the latter, they open themselves up to criminal sanctions. (*See* Doc. 2, PageID 103) ("Plaintiffs must then create evidence to be used against them to prosecute a high misdemeanor crime of misrepresenting the contents of the waiver affirmation.") Plaintiffs argue this violates their Fifth Amendment right against self-incrimination.

Upon review of the record, the Court is unable to determine whether Plaintiffs are likely to succeed on the merits of a separate Fifth Amendment violation. However, the issues are undoubtedly intertwined with their Fourth Amendment claim. (*See e.g.* Doc. 17, PageID 292-93) ("The lack of a warrant procedure in the body of the [Code] and the coercion used to induce landlords to either submit sworn affirmations under threat of criminal prosecution or to permit a warrantless search are circumstances that exist under every application of the [Code]."). Because the Court has determined that Plaintiffs have satisfied their preliminary burden as it relates to their Fourth Amendment claim, the Court need not address Plaintiffs' additional arguments at this stage. If Plaintiffs ultimately prevail, the Court will endeavor to determine whether additional provisions are unconstitutional, and if so, whether such provisions can be severed. *Connection Distrib. Co.*, 557 F.3d at 335.

### 2. Irreparable Harm

"To demonstrate irreparable harm, the plaintiff[] must show that . . . [she] will suffer actual or imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). Harm is irreparable if it cannot be fully compensated by monetary damages. *Overstreet v. Lexington-Fayetee Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Constitutional violations generally trigger irreparable harm. *See e.g. Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Obergefell v. Kasich,* 2013 WL 3814262, at *6 (S.D. Ohio 2013). Accordingly, because the Court has found Plaintiffs have satisfied their preliminary burden, the Court likewise finds this favor tips in favor of Plaintiffs.

### 3. Substantial Harm to Others and Public Interest

The parties address the remaining two factors together. With regard to determining the probability that granting a temporary restraining order will substantially harm others, "the focus is on the harm that a defendant will suffer[.]" *Lander v. Mongtomery Cty. Bd. Comm'r*, 159 F. Supp. 2d 1044, 1053 n. 18 (S.D. Ohio 2001).

Defendants argue the Village will suffer harm if Evendale officials are not permitted to enforce the Code because the Code is necessary to protect its citizens who are unaware of their rights under Ohio's landlord-tenant law. Plaintiffs counter that the Village will not suffer harm because Plaintiffs have leased properties in the Village without incident for years prior to the enactment of the Code.

The Court finds both of these factors tip in favor of Plaintiffs. First, the Court agrees with Plaintiffs that the Village is not likely to suffer harm if enjoined from enforcing the Code. As the parties acknowledged, aside from Mr. Vonderhaar, all but a few rental properties in the Village have already complied with the Code, either by requesting inspections or submitting

affirmations in lieu of inspections. (Ex. 7). As for Mr. Vonderhaar, it is undisputed he has owned rental properties in Evendale for over 30 years, and until the recent citations, had never been cited for a violation of any property code. Finally, public interest certainly favors upholding the constitutional rights of citizens.

### A. As-Applied Challenge

Plaintiffs do little more than mention in passing that the Code is unconstitutional as it is applied to them. Nevertheless, as testimony, which arguably relates to an as-applied challenge, was elicited, the Court briefly addresses this issue.

As explained above, Mr. Lemen executed the affidavit and paid the $100 fee. However, he testified that he submitted the affidavit because he felt as though he had no choice. Nevertheless, his property has not yet been subject to a search nor has he been cited for non-compliance.

Mr. Vonderhaar argues he was improperly cited for failing to obtain rental registration permits as required by an unconstitutional ordinance. He also points out that the citations were issued after this lawsuit and the instant motion were filed. (Ex. 3). However, the citations were not issued for Mr. Vonderhaar's refusal to submit to a potentially illegal search. Rather, he was cited for failure to comply with the rental permit requirements when he allegedly did not complete the registration in the time allotted. Therefore, these citations appear to be unrelated to his constitutional claims, and therefore, would not warrant Court intervention. *See Mamakos*, 2017 WL 2861719 at *14.

Ultimately, the evidence presented does not satisfy Plaintiffs' burden to show they are likely to succeed on the merits of an as-applied challenge at this time. Accordingly, the Court need not analyze the remaining factors. *See Gonzales v. Nat'l Bd. Of Med. Exam'rs*, 225 F.3d

620, 625 (6th Cir. 2000). However, given the Court's conclusion with respect to Plaintiffs' facial challenge, the Court has serious concerns regarding the enforcement of the Code as applied to Plaintiffs, particularly given the timing of the issuance of citations to Mr. Vonderhaar.

## IV. **CONCLUSION**

Balancing the above factors, the Court finds injunctive relief is warranted as it relates to Plaintiffs' Fourth Amendment claim. Plaintiffs have satisfied their burden to show that portions of the Code related to the warrant provision (or more accurately, the lack thereof) are unconstitutional on their face. Defendants are therefore enjoined from enforcing the Code until further order of the Court. The Court, however, is in no position to sever portions of the Code at this time, as the ruling is only preliminary. The Court further recognizes that due to the severability clause, provisions of the Code ultimately not found to be unconstitutional could remain valid and enforceable.

Accordingly, consistent with the foregoing, Plaintiffs' Motion (Doc. 2) is **GRANTED IN PART.**

**IT IS SO ORDERED WITHOUT BOND FOR GOOD CAUSE SHOWN**.

    s/*Michael R. Barrett*
   Michael R. Barrett, Judge
   United States District Court